**Stanley SHECHTER, Plaintiff–Appellee,**

**v.**

**COMPTROLLER OF the CITY OF NEW YORK, Corporation Counsel of the City of New York, Court of Appeals of the State of New York, George Vasquez, John Doe, Howard L. Lapidus, Michael G.T. Brookes, Peter L. Zimroth, Peter B. Panes, Queensborough Community College, Kurt R. Schmeller, Sandra Seltzer, City University of New York and John H. Snyder, Defendants,**

**Antonia Levine, Gerald Maslon and Chana Schwartz, Defendants–Appellants.**

**No. 157, Docket 95–7226.**

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1995.

Decided March 21, 1996.

Stanley Shechter, New York City, pro se, Plaintiff–Appellee.

Cheryl Payer, Assistant Corporation Counsel of the City of New York, New York City (Paul A. Crotty, Corporation Counsel, Stephen J. McGrath, and Alan Schlesinger, Assistant Corporation Counsel, New York City, of counsel), for Defendants–Appellants.

Before: MESKILL, MAHONEY, and WALKER, Circuit Judges.

MAHONEY, Circuit Judge:

Defendants-appellants Antonia Levine, Gerald Maslon, and Chana Schwartz appeal from an order entered February 7, 1995 in the United States District Court for the Southern District of New York, David N. Edelstein, *Judge,* that denied their motion for judgment on the pleadings on the basis of qualified immunity.

Affirmed.

### Background

The facts, as alleged in plaintiff-appellee Stanley Shechter's complaint and accepted as true on this motion for judgment on the pleadings, are as follows. On August 25, 1983, Shechter was offered a full-time position as an assistant professor at Queensborough Community College ("QCC"), a subdivision of the City University of New York ("CUNY"). Shechter accepted this offer, and began preparing to teach several courses in the upcoming semester.

On September 16, 1983, defendant Paul B. Panes, the chairman of QCC's Department of Basic Educational Skills, called Shechter on behalf of QCC and its president, defendant Kurt R. Schmeller, and rescinded QCC's offer of employment. In response, Shechter served a notice of claim upon CUNY and its attorney, the Corporation Counsel of the City of New York (the "Corporation Counsel"), on November 15, 1983.

In December 1983, Shechter attempted to obtain a copy of his filed notice of claim in order to prepare a complaint against QCC and CUNY. He visited the offices of the Corporation Counsel, the Comptroller of the City of New York (the "Comptroller"), and defendant-appellant Gerald Maslon, an attorney in the Office of Legal Affairs at CUNY. None of the people he spoke with in these offices was able to locate his file. Despite repeated visits and telephone calls to these offices, Shechter was unable to obtain a copy of his filed notice of claim.

As a result of the loss of the notice of claim, defendants-appellants Chana Schwartz, an attorney employed by the Comptroller, and Antonia Levine, an attorney employed by the Corporation Counsel, both advised Shechter to file another notice of claim and then wait for thirty days before initiating a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules. In reliance upon this advice, Shechter filed a second notice of claim on January 12, 1984, and thereafter delayed initiating an Article 78 proceeding in accordance with the attorneys' advice.

In fact, no notice of claim is necessary in order to bring an Article 78 proceeding. *See In re Caggiano,* 78 Misc.2d 187, 189–90, 342 N.Y.S.2d 203, 206 (Sup.Ct.1973) ("[L]ack of service of any notice of claim ... is not determinative since no such notice is required before bringing an Article 78 proceeding.") (citing Accredited Demolition Constr. Corp. v. City of Yonkers, 37 A.D.2d 708, 324 N.Y.S.2d 377 (2d Dep't 1971) (mem.)), *aff'd sub nom Caggiano v. Frank,* 44 A.D.2d 828, 355 N.Y.S.2d 170 (2d Dep't 1974) (mem.). Moreover, as a result of the additional time that elapsed due to Shechter's refiling of the notice of claim and subsequently delaying the commencement of litigation, Shechter failed

to initiate his Article 78 proceeding within the applicable four-month statute of limitations. *See* N.Y.Civ.Prac.L. & R. § 217.

Accordingly, on May 8, 1984, the New York Supreme Court dismissed Shechter's Article 78 petition as time-barred, and the Appellate Division affirmed this ruling on May 23, 1985. *See Schechter v. Queensborough Community College,* 111 A.D.2d 602, 489 N.Y.S.2d 970 (1st Dep't 1985) (table). The New York Court of Appeals denied Shechter's motion for leave to appeal on November 21, 1985. *See Schechter v. Queensborough Community College,* 66 N.Y.2d 604, 489 N.E.2d 769, 498 N.Y.S.2d 1024 (1985) (table).

On July 17, 1987, Shechter initiated the present action pursuant to 42 U.S.C. §§ 1983, 1985, and 1988, seeking reinstatement to his position at QCC, back pay, damages, and a declaratory judgment that the Article 78 proceeding was void. The defendants moved to dismiss the complaint in September 1987 on statute of limitations grounds or, in the alternative, because Shechter's claim failed to state a cause of action. Judge Edelstein referred the motion to Magistrate Judge Leonard Bernikow.

Magistrate Judge Bernikow issued a report and recommendation which proposed that the motion be granted as to all defendants except Maslon, Schwartz, and Levine. The report and recommendation construed Shechter's complaint against these three remaining defendants to allege that the provision of erroneous legal advice had deprived Shechter of his right of access to the courts. Judge Edelstein adopted Magistrate Judge Bernikow's recommendation, but remanded the matter to Magistrate Judge Bernikow as to Maslon, Schwartz, and Levine for consideration of their claims of absolute immunity. Magistrate Judge Bernikow issued a second report and recommendation that proposed rejection of the absolute immunity claim. Judge Edelstein adopted this report and recommendation in its entirety on September 17, 1991.

Having previously answered Shechter's amended complaint, defendants-appellants then moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) on the ground of qualified immunity.[1] On March 30, 1993, Magistrate Judge Bernikow issued a report and recommendation which proposed that the motion be denied. *See Shechter v. Queensborough Community College,* No. 87 Civ. 5110(DNE), slip op. (S.D.N.Y. Mar. 30, 1993) (*"Shechter I "*). Judge Edelstein adopted this conclusion in a memorandum and order dated February 6, 1995. *Shechter v. Queensborough Community College,* No. 87 Civ. 5110(DNE), slip op., 1995 WL 46668 (S.D.N.Y. Feb. 6, 1995) (*"Shechter II "*). Both Magistrate Judge Bernikow and Judge Edelstein concluded that defendants-appellants were not entitled to qualified immunity both because the conduct complained of was outside of the scope of their duties, and because the conduct violated Shechter's clearly established right of access to the courts. *Shechter I,* slip op. at 8–17; *Shechter II,* slip op. at 3–5.

This appeal followed.

### Discussion

■ The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rodriguez v. Phillips,* 66 F.3d 470, 475 (2d Cir.1995) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). In order to sustain a qualified immunity defense, a public official must demonstrate that two conditions are satisfied.

■ First, the defendant must show that the conduct of which the plaintiff complains falls within the scope of the defendant's official duties. *See Butz v. Economou,* 438 U.S. 478, 495, 98 S.Ct. 2894, 2905, 57 L.Ed.2d 895 (1978) (doctrine does not "abolish the liability of federal officers for actions manifestly be-

---

1. The defendants' Rule 12(c) motion also alleged, as an alternative ground, failure to state a claim upon which relief can be granted. Only the qualified immunity ground was decided by the district court, however, and only this issue is reviewable on this appeal.

yond their line of duty"); *Jones v. Clinton,* 72 F.3d 1354, 1358 (8th Cir.1996) ("We are unaware ... of any case in which any public official ever has been granted any immunity from suit for his unofficial acts...."); *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988) ("The defendant public official must first prove that 'he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983) (per curiam))). Second, the defendant must demonstrate that his alleged conduct did not violate one of the plaintiff's clearly established statutory or constitutional rights. *See Young v. Selsky,* 41 F.3d 47, 54 (2d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995). *But cf. Rich,* 841 F.2d at 1564 ("Once the defendant public official satisfies his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on the defendant's part. This burden is met by proof demonstrating that the defendant public official's actions 'violated clearly established constitutional law.'" (quoting *Zeigler,* 716 F.2d at 849)). If both of these conditions are satisfied, the defendant is entitled to qualified immunity. Judge Edelstein, adopting the recommendations of Magistrate Judge Bernikow, concluded that neither of these requirements was satisfied by defendants-appellants in this case.

With respect to the first inquiry, Magistrate Judge Bernikow reasoned that because the specific act of giving legal advice to a pro se litigant was not within defendants-appellants' authorized duties, such conduct stripped them of qualified immunity. *Shechter I,* slip op. at 9. Judge Edelstein endorsed this reasoning, adding that the defendants-appellants' "alleged actions—withholding legal documents and giving false or misleading legal advice to an unrepresented adversary—did not fall within the scope of their discretionary functions." *Shechter II,* slip op. at 3.

■ We disagree with the district court's analysis of this issue. The approach utilized by Judge Edelstein and Magistrate Judge Bernikow treats the permissibility or legality of the challenged official action as the deter-minant of the scope of employment question. But analyzing the scope of employment issue in this manner would effectively eliminate the qualified immunity defense, because any wrongful conduct would, *eo ipso,* be beyond the scope of the defendant's authority. The correct approach was articulated in *Griswold v. Alabama Department of Industrial Relations,* 903 F.Supp. 1492 (M.D.Ala.1995):

Examples of the standard's application reveal the level of generality used to determine whether a government official acted within discretionary authority. In *Rich,* the Eleventh Circuit asked whether an investigator acts within his job duties and authority when he submits a probable cause affidavit, not when he submits a probable cause affidavit without a reasonable basis, as the plaintiff alleged. 841 F.2d at 1562, 1564. In *Jordan* [*v. Doe,* 38 F.3d 1559 (11th Cir.1994) ], the Eleventh Circuit asked whether federal marshals act within their job duties and authority by transporting detainees between facilities, not by transporting detainees to overcrowded, unsanitary facilities. 38 F.3d at 1564–66. In a case from this district, the court asked whether a police officer acts within his scope of authority and job duties by controlling an arrestee, not beating an arrestee. *Sweatt v. Bailey,* 876 F.Supp. 1571, 1576 (M.D.Ala.1995).

903 F.Supp. at 1498; *cf. Davis v. Scherer,* 468 U.S. 183, 196 n. 14, 104 S.Ct. 3012, 3020 n. 14, 82 L.Ed.2d 139 (1984) ("[T]he District Court's finding that appellants ignored a clear legal command does not bear on the 'ministerial' nature of appellants' duties.... [A discretionary] authority remains discretionary however egregiously it is abused."). Thus, the issue posed for determination in this case is whether the alleged provision of legal advice to Shechter was entirely outside the scope of any employment duty of defendants-appellants, or whether it might be deemed a malperformance of a duty to respond to legal inquiries made by members of the general public.

■ In any event, despite its erroneous rationale, the district court was correct in its ultimate ruling on the scope of authority issue on the record that was presented to it.

Qualified immunity is an affirmative defense that must be pled and proved by the defendant. *See Blissett v. Coughlin,* 66 F.3d 531, 538 (2d Cir.1995); *see also* Fed.R.Civ.P. 8(c). Defendants-appellants' entire submission on this issue is the statement of the fourth affirmative defense in their answer: "The defendants were, at all times relevant to the amended complaint, government officials immune from suit under both the doctrines of absolute and qualified immunity." This bald assertion provides no basis for a ruling in their favor. Affirmative "[d]efenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy." *National Acceptance Co. of Am. v. Regal Prods., Inc.,* 155 F.R.D. 631, 634 (E.D.Wis.1994).

■ It is not enough that defendants-appellants were "government officials" to establish qualified immunity. They must further demonstrate that the *specific acts at issue* were performed within the scope of their official duties. The record is devoid of any evidence, or even bare allegations, to this effect. Further, we must "draw all reasonable inferences in favor of the non-movant" in addressing a Rule 12(c) motion, *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994), and "[t]his standard is 'applied with particular strictness when the plaintiff complains of a civil rights violation,'" *id.* (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991) (*Branum* citations omitted in *Sheppard* )). Accordingly, defendants-appellants' pleading is insufficient to establish their qualified immunity defense.

Because defendants-appellants' qualified immunity defense fails with respect to the scope of authority issue, we must affirm the ruling of the district court. Thus, we need not reach the second prong of the qualified immunity test—the question whether the alleged conduct of Levine, Maslon, and Schwartz violated any of Shechter's clearly established rights, as the district court determined. In view of the already protracted history of this litigation, however, we deem it appropriate to address this issue briefly with a view to reducing the possibility of multiple appeals in this case.

Both Magistrate Judge Bernikow and Judge Edelstein relied essentially upon the premise that a constitutional right to access to the courts was clearly established in 1983–1984, the time of the alleged wrongdoing. *Shechter I,* slip op. at 12; *Shechter II,* slip op. at 4. A proposition stated at this level of generality, however, does not suffice as a basis to preclude qualified immunity. As the Supreme Court stated in *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987):

The operation of [the "clearly established right"] standard ... depends substantially upon the level of generality at which the relevant "legal rule" is to be identified. For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading. Such an approach, in sum, would destroy "the balance that our cases strike between the interests in vindication of citizens' constitutional rights and in public officials' effective performance of the duties," by making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages." *Davis, supra,* 468 U.S. at 195 [104 S.Ct. at 3019]. It should not be surprising, therefore, that our cases establish that the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable

official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell* [v. *Forsyth*, 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985) ]; but it is to say that in the light of pre-existing law the unlawfulness must be apparent. See, *e.g., Malley* [v. *Briggs*, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986) ]; *Mitchell, supra,* 472 U.S. at 528 [ 105 S.Ct. at 2816]; *Davis, supra,* 468 U.S. at 191, 195 [104 S.Ct. at 3017, 3019–20].

*Anderson,* 483 U.S. at 639–40, 107 S.Ct. at 3038–39 (footnote omitted) (alterations partly added).

This Circuit has distilled the following standard from the Supreme Court's teaching on this issue:

In determining whether a particular right was clearly established at the time defendants acted, this Court has considered three factors: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful. *See Francis v. Coughlin,* 891 F.2d 43, 46 (2d Cir.1989) (citing *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991), *cert. denied,* 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992); *see also Rodriguez,* 66 F.3d at 476.

■ The analysis of the "clearly established right" issue by the district court in this case does not meet these standards. Although the district court correctly reasoned that a constitutional right to access to the courts has long been established, *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 579, 94 S.Ct. 2963, 2985–86, 41 L.Ed.2d 935 (1974) (right of access is founded in the Due Process Clause), this general right does not meet the specificity requirements of *Anderson,* 483

U.S. at 639–40, 107 S.Ct. at 3038–39. All of the cases cited by Magistrate Judge Bernikow, *see Shechter I,* slip op. at 12–13, and Judge Edelstein, *see Shechter II,* slip op. at 4, for the existence of a constitutional right of access to the courts involve impediments to such access by incarcerated prisoners. *See Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 1494–96, 52 L.Ed.2d 72 (1977); *Johnson v. Avery,* 393 U.S. 483, 490, 89 S.Ct. 747, 751, 21 L.Ed.2d 718 (1969); *Morello v. James,* 810 F.2d 344, 346 (2d Cir.1987); *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir.1986); *Procup v. Strickland,* 760 F.2d 1107, 1110 (11th Cir.1985), *vacated,* 760 F.2d 1116 (11th Cir.1985) (per curiam) (in banc), *on rehearing,* 792 F.2d 1069 (11th Cir.1986) (per curiam) (in banc); *Corby v. Conboy,* 457 F.2d 251, 253 (2d Cir.1972). These cases do not establish with "reasonable specificity," *Jermosen,* 945 F.2d at 550, that the provision of misleading legal advice to an unincarcerated adversary constitutes a constitutional violation. Further, three of these cases were decided after the conduct occurred for which immunity is sought in this case, and therefore could not possibly have provided defendants-appellants with notice regarding the lawfulness of their conduct. In sum, the authorities upon which the district court relied do not support the existence of the "clearly established right" that Shechter claims to have been violated in this case.

Because, on this record, the district court's ruling on the issue of qualified immunity must be affirmed for the reasons previously stated, we will not proceed to a definitive resolution of the "clearly established right" issue at this juncture. As is apparent, however, the underlying issue of a constitutional violation will have to be considered anew on remand, whether under the "clearly established right" branch of the qualified immunity defense, or in determining the merits of Shechter's constitutional claim against defendants-appellants.

## Conclusion

The order of the district court is affirmed.