Dennis J. D'AGUANNO, John William McVeigh, Christine W. Webster & Wesley Keith Coleman, Plaintiffs,

v.

Walter J. GALLAGHER, individually, Kenneth E. Kinzler, Jr., individually, Robert A. Pasteur, individually, Miguel A. Vazquez, individually, & Hector Ramirez, III, individually, Defendants.

No. 92–0991–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Aug. 9, 1993.

Helaine M. Blum, Legal Aid Soc., Orange County Bar Ass'n, James M. Russ, Law Office of James M. Russ, P.A., Orlando, FL, for plaintiffs.

Jeffrey Graham Slater, Eubanks, Hilyard, Rumbley, Meier & Lengauer, P.A., Orlando, FL, for defendants.

## ORDER

G. KENDALL SHARP, District Judge.

In this case, Dennis J. D'Aguanno (D'Aguanno), John William McVeigh (McVeigh), Christine S. Webster (Webster), and Wesley Keith Coleman (Coleman) sue Walter Gallagher (Gallagher), Kenneth E. Kinzler, Jr. (Kinzler), Robert A. Pasteur (Pasteur), Miguel A. Vazquez (Vazquez), and Hector Ramirez (Ramirez), in their individual capacity, for alleged civil rights violations arising under 42 U.S.C. §§ 1983, 1988; Amendments I, IV, V, VIII, and XIV of the United States Constitution; and Article I, sections 2, 5, 9, 12, and 23 of the Florida Constitution. Plaintiffs' five-count complaint alleges that defendants violated plaintiffs' rights to peaceable assembly, freedom of association, privacy, due process of law, equal protection under the law, and the right to be free from cruel and unusual punishment. Plaintiffs seek declaratory and injunctive relief and compensatory and punitive damages. Defendants filed a motion for summary judgment based on qualified immunity and the merits of the case. Plaintiffs filed a memorandum of law in opposition to defendants' motion. After reviewing the case file and relevant law, the court concludes that defendants are entitled to summary judgment.

### I. Facts

Gallagher was the Sheriff of Orange County, Florida when the events at issue allegedly occurred. Kinzler, Pasteur, Vazquez, and Ramirez were deputy sheriffs employed by the Orange County Sheriff.

Plaintiffs are four homeless individuals who reside in shelters which they constructed at what plaintiffs describe as a "homeless campsite" on undeveloped private property. The property owner was unaware that the campsite existed and never gave plaintiffs permission to establish the campsite.

Plaintiffs allege that on December 16, 1991, Kinzler, Pasteur, Vazquez, and Ramirez, while on duty and acting under the color of state law, visited the campsite and destroyed McVeigh's and D'Aguanno's shelters and personal property, including food items and furniture. By January 1992, D'Aguanno had resided at the campsite for two years, McVeigh for five months, Webster for four months, and Coleman for six years. During the time plaintiffs occupied the campsite, defendants and other Orange County deputy sheriffs visited the campsite at least once a month. During these visits, the deputies routinely requested identification from plaintiffs. Deputies repeatedly told McVeigh, Webster, and Coleman to leave the campsite. D'Aguanno stated that defendants never told him to leave the campsite. Although the property owner did not request that defendants visit the campsite, the owner stated that she was grateful for defendants' efforts to remove plaintiffs and their campsite from her property.

Plaintiffs argue that Gallagher is liable for the acts of the other defendants because he acquiesced in the other defendants' actions and encouraged his deputy sheriffs to undertake a campaign to force the homeless from their campsite and other similar campsites. Further, plaintiffs allege that Gallagher failed to adequately hire, train, and supervise his deputies to ensure that they conducted themselves in a lawful manner. In his deposition, Gallagher responds that he never visited plaintiffs' campsite and that the Orange County Sheriff's Department does not have any custom or policy that encourages or authorizes deputies to harass homeless individuals or destroy their property.

Plaintiffs filed their complaint in a Florida state court. Because the complaint asserted claims based on federal law, defendants successfully removed the action to this court pursuant to 28 U.S.C. §§ 1441(b) and 1446.

The matter initially came before the court on defendants' motion to dismiss plaintiffs' complaint for failure to state a claim on which relief could be granted. However, because defendants' motion to dismiss relied on matters outside the pleadings, the court converted the motion to dismiss to a motion for summary judgment pursuant to rule 12(c) of the Federal Rules of Civil Procedure. In defendants' subsequent memorandum of law in support of their motion for summary judgment, defendants raise qualified immunity as a defense to plaintiffs' claims and as an additional basis for summary judgment. The case is currently before the court on defendants' motion for summary judgment.

## II. Conclusions of Law

### A. Standard for Summary Judgment

Summary judgment is authorized if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Material facts are facts that might affect the outcome of the case under the applicable substantive law. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.

The moving party bears the initial burden of proving that no genuine issue of material fact exists and the moving party may rely solely on his pleadings to satisfy this burden. Celotex v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The non-moving party that bears the burden of proof at trial must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate "specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c)). If the evidence offered by the non-moving party is merely colorable ... or is not significantly probative ... summary judgment may be granted. Anderson, 477 U.S. at 249–50, 106 S.Ct. at 2510–11. Further, summary judgment is mandated against a party who fails to prove an essential element of his case, on

which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *Qualified Immunity*

■ Government officials performing discretionary functions are entitled to qualified immunity from civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Plaintiffs do not dispute that defendants were performing discretionary functions when defendants allegedly violated plaintiffs' constitutional rights. Therefore, plaintiffs bear the burden of proving that defendants violated clearly established law. *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988). To prove that the rights allegedly violated were clearly established, plaintiffs must show that defendants should have known that their actions were violative of plaintiffs' rights as established by closely analogous precedent. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738 (holding that general allegations of wrongdoing should not suffice to subject government officials to the costs and burdens of trial and that the right the official is alleged to have violated must have been clearly established in a more particularized sense). The Supreme Court reasons that the burden on government officials is too great if courts allow plaintiffs to allege violations of their constitutional rights "in general." *Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1986). As an example, the Court found:

> ... [T]he right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of *Harlow.* Plaintiffs would be able to convert the rule of qualified immunity that our

cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *Harlow* would be transformed from a guarantee of immunity into a rule of pleading ... making it impossible for officials "reasonably [to] anticipate when their conduct may give rise to liability for damages."

*Anderson,* 483 U.S. at 639, 107 S.Ct. at 3039. Accordingly, a plaintiff cannot prove that a particular right was clearly established by relying solely on authority that grants broad and sweeping statutory or constitutional rights. Further, because qualified immunity is "an *immunity from suit* rather than a mere defense to liability," *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1984) (emphasis in original), the applicability of qualified immunity is a threshold question that courts must decide at the earliest possible stage of the litigation. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

### C. *Analysis*

#### 1. *The Right to Peaceable Assembly and Freedom of Association.*

■ In Count I of their complaint, plaintiffs allege that defendants violated plaintiffs' rights to peaceable assembly and freedom of association as guaranteed by the First and Fourteenth Amendments to the United States Constitution and Article I, section 5 of the Florida Constitution. Defendants deny the allegation and claim that they are entitled to summary judgment because qualified immunity precludes litigation on this issue.

To prove that their rights to peaceable assembly and freedom of association were clearly established, plaintiffs primarily rely on *Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Although *Griswold* recognizes freedom of association as a clearly established general right, *Griswold* concerns one's right to privacy in the use of contraception and is, therefore, unpersuasive to prove that plaintiffs had clearly established rights to peaceable assembly and freedom of association because only closely analogous authority proves that a right was

clearly established. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

Plaintiffs also rely on *Board of Directors of Rotary Int'l v. Rotary Club,* 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987), and *Wilson v. Taylor,* 733 F.2d 1539 (11th Cir. 1984), to prove that their rights to peaceable assembly and freedom of association were clearly established. The court finds, however, that *Rotary Club* and *Wilson* do not prove that plaintiffs rights were clearly established because those cases are not sufficiently analogous to the case at bar to give defendants notice that plaintiffs retained the rights to peaceable assembly and freedom of association while living on private property without permission of the owner. *See Rotary Club,* 481 U.S. at 540, 107 S.Ct. at 1943 (concerning the associational rights of a large international organization); *Wilson,* 733 F.2d at 1550 (holding that the fundamental right of association protects a couple's dating relationship from government interference). Therefore, defendants are entitled to qualified immunity from suit on Count I because defendants did not violate clearly established law. *See Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16.

### 2. *The Right to Privacy.*

■ Count II of the complaint asserts that defendants violated plaintiffs' rights to privacy and to be secure in their persons, homes, papers, and effects, in contravention the Fourth and Fourteenth Amendment of the United States Constitution and Article I, sections 12 and 23 of the Florida Constitution. Defendants deny the allegation and urge that qualified immunity precludes litigation on this issue.

Plaintiffs rely on *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), to prove that their right to privacy was clearly established. Although *Mapp* recognizes the fundamental nature of the right to privacy, plaintiffs' reliance on *Mapp* is misplaced because *Mapp* concerns the illegal search of the plaintiff's privately-owned residence, which distinguishes *Mapp* from the instant case. *Id.* at 644–45, 81 S.Ct. at 1685–86. Therefore, *Mapp* is ineffective to prove that plaintiffs' right to privacy was clearly established

while living on private property without permission. *See Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738; *Lenea v. Lane,* 882 F.2d 1171, 1177 (7th Cir.1989). Plaintiffs also rely on *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977). *Mimms* concerns a routine traffic stop and subsequent seizure of a concealed weapon, which distinguishes *Mimms* from the case at bar. *Id.* at 107–08, 98 S.Ct. at 331–32. Therefore, *Mimms* similarly fails to prove that plaintiffs' right to privacy was clearly established. Accordingly, defendants are entitled to qualified immunity from suit and summary judgment on Count II of the complaint. *See Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16.

Additionally, a protected right to privacy arises when an individual has a subjective expectation of privacy that society is prepared to recognize as reasonable. *See generally Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Plaintiffs urge that their complaint asserts facts that demonstrate their "legitimate expectation of privacy," but cite no law showing that society accepts their expectation of privacy as being reasonable. Therefore, plaintiffs fail to prove an essential element of their case, which entitles defendants to summary judgment. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### 3. *The Right to Due Process of Law.*

■ In Count III, plaintiffs allege that defendants violated plaintiffs' right to due process of law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, sections 2 and 9 of the Florida Constitution. Defendants deny the allegation and assert qualified immunity as a defense.

Plaintiffs rely on *Johnson v. United States Dept. of Agric.,* 734 F.2d 774 (11th Cir.1984), for the proposition that, at a minimum, the Fifth Amendment requires notice and an opportunity to be heard before the government deprives an individual of a right or interest. *Id.* at 782. However, *Johnson* is not analogous to the case at bar because the plaintiff in *Johnson* received a federal loan, the terms of which specifically created a property interest and a right to due process protection.

*Id.* at 775–76. Thus, *Johnson* is unpersuasive to prove that plaintiffs right to due process was clearly established because *Johnson* does not give defendants notice that plaintiffs had a right to due process given the facts of this case.

■ The remaining authority on which plaintiffs rely does not emanate from the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, or the Florida Supreme Court, and, therefore, cannot prove that plaintiffs' right to due process was clearly established. *See Courson v. McMillian,* 939 F.2d 1479, 1498 (11th Cir.1991) (holding that a right is clearly established only if the right is recognized by the United States Supreme Court, the United States Court of Appeals for the circuit where the events at issue occurred or the highest court of the state where the events at issue occurred). Thus, defendants are entitled to qualified immunity from suit on Count III because they did not violate clearly established law.

### 4. *The Right to Equal Protection Under the Law.*

Count IV of the complaint asserts that defendants violated plaintiffs' right to equal protection under the law by treating plaintiffs more harshly than defendants treated non-homeless individuals in similar circumstances. Defendants deny the allegation and claim qualified immunity from suit on this issue.

■ Plaintiffs contend that because homeless individuals constitute a discreet and insular minority and a suspect class, the court should review defendants' actions with a heightened level of scrutiny. However, homeless individuals do not constitute a suspect class for the purpose of equal protection analysis. *See e.g., Harris v. McRae,* 448 U.S. 297, 323, 100 S.Ct. 2671, 2691, 65 L.Ed.2d 784 (1980); *Kreimer v. Bureau of Police,* 958 F.2d 1242, 1269 n. 36 (3d Cir.1993). Thus, to prove that defendants violated plaintiffs' right to equal protection under the law, plaintiffs must show that defendants lacked any "rational basis" for their actions. *Kite v. Marshall,* 661 F.2d 1027, 1030 (5th Cir.1981), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982). Accordingly, defendants are entitled to summary judgment if defendants' conduct is rationally related to a "permissible government objective." *Id.* Further, when state action does not affect a suspect class, courts presume that the state action is valid and only find it unconstitutional when the state action lacks any relation to a permissible government objective. *Id.*

■ Plaintiffs contend that defendants tried to remove plaintiffs from their campsite solely because plaintiffs were homeless individuals. However, the record indicates that defendants attempted to remove plaintiffs because plaintiffs did not have permission to live on the property. *See* Fla.Stat.Ann. § 810.09 (West Supp.1993) (prohibiting an individual from entering the land of another without permission, license, or invitation). Because the owner of the property on which plaintiffs lived never gave plaintiffs permission to enter the property, plaintiffs violated Florida law by living on the property. Accordingly, defendants' actions were related to a permissible government objective. *See* Fla.Stat.Ann. § 30.15 (West Supp.1993) (providing that Florida sheriffs and sheriff's deputies have a duty to enforce the laws of the State of Florida). Therefore, plaintiffs fail to prove that defendants' actions were unrelated to a permissible government objective, which is an essential element of their equal protection claim. Because plaintiffs failed to establish an essential element of their equal protection claim, defendants are entitled to summary judgment on Count IV. *See Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

### 5. *The Right to Be Free from Cruel and Unusual Punishment.*

■ In Count V of their complaint, plaintiffs allege that defendants inflicted cruel and unusual punishment on plaintiffs in contravention of the Eighth Amendment to the United States Constitution and Article I, section 17 of the Florida Constitution. Defendants disagree and move for summary judgment based on qualified immunity.

The Cruel and Unusual Punishments Clause of the Eighth Amendment only protects individuals convicted of crimes. *See*

*Whitley v. Albers,* 475 U.S. 312, 318, 106 S.Ct. 1078, 1083, 89 L.Ed.2d 251 (1986). Because plaintiffs were never convicted of a crime, their cruel and unusual punishment claim fails, which entitles defendants to summary judgment on this issue.

### 6. *Plaintiffs' State Law Claims.*

Florida courts recognize that the federal and Florida constitutional provisions impose the same standard. *Florida High Sch. Activities Ass'n v. Bradshaw,* 369 So.2d 398, 402 (Fla.Dist.Ct.App.1979). In addition, plaintiffs do not submit authority to suggest that the Florida constitutional provisions at issue provide any greater protection than their federal counterparts. Accordingly, because resolution of the plaintiffs' state constitutional claims mirrors the resolution of the corresponding federal constitutional claims, the court finds that defendants are entitled to summary judgment on plaintiffs' state constitutional claims.

### III. Conclusion

The court finds that the undisputed facts as well as the reasonable inferences drawn from the facts fail to create a genuine issue of fact requiring trial. Plaintiffs fail to prove that defendants violated clearly established law as to plaintiffs rights to peaceable assembly, freedom of association, privacy, and due process of law, under federal or Florida law. Further, plaintiffs fail to state a claim that defendants violated plaintiffs' rights to privacy, equal protection under the law, and freedom from cruel and unusual punishment, under federal or Florida law. Therefore, the court **GRANTS** defendants' motion for summary judgment on all five counts of plaintiffs' complaint. (Docs. 4, 23.)

It is **SO ORDERED.**